THE STATE OF DELAWARE, ex-relatione, "THE BALTIMORE & OHIO TELEGRAPH COMPANY, of Baltimore City," a Corporation of the State of Maryland, *v.* THE DELAWARE & ATLANTIC TELEGRAPH AND TELEPHONE COMPANY.

*Mandamus—Foreign Corporation.*

A foreign corporation, by its charter limited in its operations to the State of its creation, is not entitled to the writ of mandamus against another foreign corporation.

The rights, privileges and immunities in the several States secured by the Federal Constitution to citizens of other States, does not apply to corporations.

*(New Castle, September, 1885.)*

MOTION to discharge a rule granted defendants to show cause why a writ of mandamus should not issue.

*Edward G. Bradford,* for the respondent, assigned the following reasons in support of his motion :

1. For that in and by the petition and exhibits filed by the said Baltimore & Ohio Telegraph Company of Baltimore City, the relator in this cause, it appears that the said relator is authorized by its charter to construct, own, operate and lease lines of telegraph only in the city of Baltimore and throughout the State of Maryland, and its authority to carry its operations is expressly limited to the city of Baltimore and the counties of the State of Maryland; and it does not appear that said relator possesses any authority under the laws of the State of Delaware to construct, own, operate or lease any telegraph line or lines within the State of Delaware, or to carry on any operations therein.

2. For that it appears in and by said petition and exhibits that the said relator is a foreign corporation created by and existing under the laws of the State of Maryland, and does not appear that it is a corporation created by or existing under the laws of the State of Delaware ; and it appears that said respondent is also a foreign corporation created by and existing under the laws of the State of New York, and does not appear that it is a corporation created by or existing under the laws of the State of Delaware, or that this court possesses any jurisdiction to proceed by way of mandamus against said respondent.

The certificate of incorporation of the relator sets forth that

the corporators "hereby form a corporation for constructing, owning, operating and leasing lines of telegraph in the State of Maryland."

There is not a word in the certificate to indicate any intention or authority on the part of the corporation to construct, own, operate, or lease any telegraphic line beyond the limits of Maryland, or beyond those limits to carry on any operations, nor does the relator's petition anywhere assert such authority. On the contrary its statement is: "That it is a corporation duly incorporated under the laws of the State of Maryland, doing business at Wilmington, Delaware. The object and purpose for which it was incorporated is the owning, operating and leasing of telegraph lines in the city of Baltimore and throughout the State of Maryland." With such a charter and such only, so far as is disclosed by the petition, the relator comes within the State of Delaware, and asks this court to compel, by mandamus, the respondent to aid the relator in operating lines of telegraph beyond the limits of Maryland and within this State. The court will surely decline to do so, for the reason that the relator is wholly without authority to operate telegraphic lines in Delaware. The relator, as a corporation, is a mere creature of the law, and as such its powers are measured by its charter. What has not been granted in and by its charter or articles of association, either expressly or by implication, is prohibited by the common law. *Trustees of Dartmouth College v. Woodward*, 4 Wheaton, 518, 636; *Bank of Augusta v. Earle*, 13 Pet., 519, 587; *Perrine v. Chesapeake and Delaware Canal Co.*, 9 How., 172, 184; *Thomas v. R. R. Co.*, 101 U. S., 71, 81; *R. R. Co. v. Harris*, 12 Wall., 65, 81; *Morawetz on Pri. Corp.*, Sec. 149, 150. The charter of the relator does not grant or attempt to grant either expressly or by implication, any right or authority to operate telegraph lines beyond the limits of Maryland.

The relator under its certificate of incorporation, became clothed with such powers, in addition to those expressly granted, as were required to carry into effect the express grant. Such powers only were conferred by implication. *Straus & Bro. v. Eagle Ins. Co. of Cincinnati*, 5 Ohio St., 60, 62.

No implied power was conferred, or intended to be conferred, to construct and operate lines of telegraph within the State of Dela-

wore.   Such a power is not "necessary to carry into effect those expressly confered."   It is not "incidental to the very existence" of the corporation.   To recognize the existence of such a power would be practically to render indefinite and uncertain to the last degree the fundamental agreement between the corporators, upon which they should have the right to rely as a sure guaranty that "the object of this company shall be to prosecute the enterprise expressly set forth in their charter or articles of association," and that the company shall not "join in any speculation which is not in pursuance of the purposes thus indicated."   The existence of any such power is expressly negatived by the provision in the charter of the relator, stating that "the places where the operations of the corporation are to be carried on, are the city of Baltimore and the counties of the State of Maryland."   No State can grant a corporate franchise which *proprio vigore* can be operative or of binding force beyond the limits of such State.   *Morawetz on Pri. Corp.*, Sec. 500.   The recognitition by any State of the existence of a foreign corporation and of the legal validity of its acts and contracts in such States depends solely upon the comity of that State.   *Paul v. Virginia*, 8 Wall., 168, 181.   It is evident that the law of comity can never enlarge or add to the powers of the foreign corporation as contained in its charter, unless the charter of the company has undertaken to confer the authority to act within the foreign State, there is no power on the part of the company, the exercise of which can be recognized as valid under the law of comity.   *Morawetz on Pri. Corp.*, Sec. 501, 502, 504, 506 ; *Angell & Ames on Corp.*, Sec. 161 ; *Bank of Augusta v. Earle*, 13 Pet., 519, 587, 588, 589 ; *Runyon v. Coster's lessee.*, 14 Pet., 122, 129, 130 ;   25 Mich., 214, 217, 220, 223, 227 ; *Pierce on Railroads*, 14, 497 ; *Binney's Opinion*, 4 Rob. (La.) 517, 72 Ill., 50, 53 ; 29 Barb. 650, 654, 655 ; *Lathrop v. Commercial Bank of Scioto*, 8 Dana (Ky.) I14, 115, 117 ; *Curtis v. McCullough*, 3 Nevada, 202, 218 ; *Bard v. Poole*, 12 N. Y., 495, 504 , *Aspinwall et al. v. The Ohio & Miss. R. R. Co.*, 20 Ind., 492 ; *Merrick v. Van Sant Wood*, 34 N. Y. 208, 215, 221.

The relator possesses no implied power under its charter to extend its lines beyond the limits of Maryland, even though such extension would be a pecuniary benefit to or conducive to the convenience of the contract of the relator's business within Maryland.

*Abbott v. Balt. & Rapp. Steam Pack. Co.*, 1 Md. Ch., 542, 549; *Ill. Cen. R. R. Co. v. Irwin*, 72 Ill., 452, 455; *Pearce v. Madison & Indianapolis R. R. Co. and Peru & Indianapolis R. R. Co.*, 21 Howard, 441; *The New Orleans, etc., Steam. Co. v. Dry Dock Co·*, 26 Am. Rep., 90; 28 La. Ann., 173; *Balt. & Havannah Gress. Turnpike Co. v. Union Railway of Balt.*, 35 Md., 234; *O. & M. R. R. Co. v. I. & C. R. R. Co.*, 5 Am. L. Reg. N. S., 733; *Downing v. Mt. Wash. R. Co.*, 40 N. H., 230; *Pierce on Railroads*, 495; *Simpson & Denison*, 10 Hare, 51, 54, 57, 58, 60, 61; *East. A. R. Co. v. E. C. R. Co.*, 7 Eng. 2 and L. Eq., 505, 508; *Colman v. E. C. R. Co.*, 10 Beav., 1; *Salomons v. Laing*, 12 Beav., 339; *Munt v. The S. & C. R. R. Co.*, 3 Eng. L. & Eq., 144, 149; *Morarwetz on Pri. Corp.*, Sec. 209, 227, 221. Legitimate traffic arrangements are simply agreements by which the business that comes within the scope of several companies is carried on more conveniently and economically and can never involve an extension of the chartered enterprise beyond the limits of the charter.

It does not at all follow because a third person may maintain an action against a corporation on a contract, or act made or done under an extension of the business of the company, beyond the chartered limits, that such extension should be considered legal or authorized by law. Such extension is illegal although such third person may be permitted to recover. *Bissell v. The M. S. & N. Ind. R. R. Co.*, 22 N. Y., 258, 280, 281; *Parish v. Wheeler*, 22 N. Y., 494, 506, 507; *Feitel v. Middlesex R. R. Co.*, 109 Mass., 398. It is claimed, on behalf of the relator, that by virtue of an Act of the General Assembly of Maryland, approved May 3, 1882, the relator received authority to extend its lines through Delaware. Laws of Md., 1882, 358. But, under the petition as filed, the relator cannot take advantages of any Maryland statutes. The relator must set forth specifically all facts and circumstances necessary to entitle him to a writ of mandamus. *High on Ex. Leg. Rem.*, Sec. 10, 450. The motion to discharge the rule operates as a demurrer to the petition. Ibid, Sec. 455. The several States of the Union are foreign to each other. 1 Greenl. on Ev., Sec. 489. And courts will not judicially notice foreign laws. Ibid, Sec. 486. Hence, foreign laws must be pleaded as well as proved. *Kinney v. Hosea*, 3 Harr., 77; 1 Chitty on Pl., 216. The petition not hav-

ing set forth or referred to the Maryland Statutes is, therefore, fatally defective.

The Maryland statute undertakes to authorize an extension of telegraph lines into other States, only with the consent of the majority of the owners of the capital stock of the corporation given in general meeting. Hence, such consent at such meeting is a condition precedent to the right of the company to operate lines in Delaware and should upon elementary principles of pleading have been stated in the petition, especially in view of the fact that this case is an application to the State of Delaware through its courts to compel the respondent to aid the relator in carrying on business in Delaware. It is also claimed on behalf of the relator that by virtue of Sec. 5263 of the U. S. Rev. Statutes the relator has authority to operate lines telegraph in Delaware. But this position is clearly untenable. The purposes of the statutes is to prevent state interference with the freedom of action of different telegraph companies. *Pensacola Tel. Co. v. West., etc., Tel. Co.*, 96 U. S. 1. It was never intended to enlarge the powers of foreign corporations in such sense as to permit them to do business in other States when their charters prohibit it.

The relator being without authority, so far as the petition discloses, to construct and operate its lines in Delaware, is not entitled to the writ of mandamus. *L. G. Railway v. Comrs. of Coffin Co.*, 6 Kans., 245; Highs Ex. Leg. Rem., Secs., 10, 32, 39.

Second. Both the respondent and the relator being foreign corporations this court has no jurisdiction to proceed by way of mandamus against the respondent. The respondent, as a foreign corporation, cannot be sued here in personam, there being no statutes providing for it. *Peckham v. North Par. in Hev.*, 16 Pick., 274; *Middlebrooks v. S. Fire Ins. Co.*, 14 Conn., 286, 301; *M. Q. v. Md. Manf. Co.*, 16 Johns., 5; *Welsh v. B. & L. H. R. R. Co.*, 18 How. (N. Y.) Pr. R., 218; *Burnett v. C. & L. H. R. R. Co.*, 4 Hun., 114. But even upon this that a suit in personam will lie here against a foreign corporation, the remedy by mandamus is improper. The object of the writ is to remedy the abuses of franchises conferred by sovereignty. So the right to act in a corporative capacity as a legal entity, conferred upon the members of an association, is a franchise proceeding only from sovereignty. Upon

18

what principle, then can the writ of mandamus issue to a foreign corporation, like the respondent, which has never received any grant of power or recognition from the General Assembly of this State. Its authority, under its charter granted in New York State, to do business here will be under the law of comity, but that is comity of the State not merely of the courts, and the essence of it is recognition and is merely permissive and does not erect the foreign corporation into a corporation of the State of Delaware. The respondent owes no duty to the State; is under no contract with the State and having received no exclusive franchise from it is not subject to the extraordinary remedy of mandamus. *Kendall v. U. S.*, 12 Pet., 524, 620. The counsel for the relator has failed to produce a single case in which it has been held that a writ of mandamus will issue against a foreign corporation, where the remedy has not been extended by statute, and where there has been no legislative grant of power to the company.

*Levi C. Bird,* for the relator: It is not true, as alleged by the respondent, that the B. & O. Telegraph Co. by its charter, was authorized to construct lines of telegraph only in the city of Baltimore and throughout the State of Maryland, but they are authorized to construct, etc., lines of telegraph in the city of Baltimore and throughout the State of Maryland. It is true that the said company has no charter in this State, but it has constructed its lines. It has become a tax-payer to the State. Laws of Delaware, Vol. 16, 671. It has become a public servant in this State and has been granted protection of the laws of the State; has used the highways of the State; has transacted its business here and is amenable to the laws of the State. Will the courts of this State now recognize the company, here doing business, when it petitions for redress to them? Can it sue or be sued here? Could offenders be indicted for cutting the wires of this company under the Act of Assemby of this State? A foreign corporation may come into a sister State and doing business claim the protection of the laws of that State. *Bank of Augusta v. Earle,* 13 Pet., 519, 520. *Fidelity Trust and Safe Deposit Company* (a corporation of the State of Pennsylvania) administrator of Derringer, decd., plaintiff below, plaintiff in error *v. Niven,* administrator, defendant below,

defendant in error. The general principle is that a corporation created in one State can make no valid contract in another, without the latter's sanction, express or implied, but it has been repeatedly decided that not only can a corporation make a contract in other States, but may be sued by service on its agencies in other jurisdictions. And court of justice in one State will, out of comity enforce the laws of another State, when, by such enforcement, they will not violate their own laws or inflict an injury on someone of their own citizens. *Christian Union v. Yount*, 11 Otto., 352, 362; *Runyon v. Coster*, 14 Pet. 122, 132; *Cowell v. Springs Co.*, 100 U. S. Reps. 58, 59, 60; *Lafayette Ins. Co. v. French*, 18 How. 404, 409; *In re Comstock*, 3 Saw, 218, 230; *B. & O. R. R. Co. v. Harris*, 12 Wallace, 65, 78, 81, 86; *Paul v. Virginia*, 1 Wall., 168; *Liverpool Ins. Co. v. Mass.*, 10 Wall., 566; *St. Clair v. Cox*, 16 Otto., 350, 355, 356, 359. In the absence of any restraining statute, corporations created by the laws of any one State are competent, as artificial persons, to bring suit in the courts of other States. *Fisk v. Chicago & C. R. R. Co.*, 4 Abb. Pr. N. S., 378; *Sav. Manuf. Co. v. Armstrong*, 17 Me., 34; *Eslena v. Ames Plow Co.*, 47 Ala., 384; *Williams v. Creswell*, 51 Miss., 817; *Lathrop v. Union Pacific R. R. Co.*, 1 McA., 234. While a corporation is indeed a mere artificial being, invisible and intangible, yet, it is a person for certain purposes in contemplation of law. *Beaston v. The Farmers' Bank of Delaware*, 12 Pet., 135; *United States v. Amedy*, 11 Wheat., 412. A suit by a corporation, in its corporative name, must be presumed to be a suit by the citizens of the States under whose laws the corporation exists. *Lathrop v. Union Pacf. R. R. Co.*, 1 McAr., 234; *Hatch v. Chicago & C. R. R. Co.*, Blactchf., 105; *Stephens v. Phœnix Ins. Co.*, 41 N. Y., 149; *U. S. v. Ins. Co's.*, 22 Wall., 99.

All charters granted by the Legislature, confer only powers, right and franchises to be enjoyed within the State; but no man can seriously contend for one moment that the State or Courts of Maryland intended to restrict the operations of this company to the confines of her borders, why it was intended to compete and contest with the strongest monopoly that existed in the land in that line of business. But the court has passed upon this very matter in State of Delaware, ex-relatione, *David M. Richardson v. Wil-*

*liam H. Swift,* President of the Diamond Match Company, current volume. The same question is considered in the opinion of Judge Wallace in *Merchants Manf. Co. v. Grand Trunk Railway Company,* 13 Fed. Rep., 358, 360. Well considered authorities have favored the conclusion that a commercial corporation may be deemed constructively present outside of the State of its origin, wherever it has property, and carries on its operations by its agents; and that service of process upon such agents at such places is good service upon the corporation, even in the absence of local laws authorizing such mode of service. *Moulin v. Ins. Co.,* 1 Dutch., 57; *Bushel v. Commonwealth Ins. Co.,* 15 Serg. & R., 176; *Libby v. Hoddydon,* 9 N. H., 394; *St. Louis Ins. Co. v. Choen,* 9 Mo., 422; *Hoyden v. Androscoggin Mills,* 1 Fed. Rep., 93, 96; *Newby v. Van Oppen,* 41 L. J. Q. B., 148; *Moch. v. Va. Fire Ins. Co.,* 10 Fed. Rep., 696, 70; 701, 702, 703; *Wheeling, etc., Trans. Co. v. B. & O. R. R. Co.,* 1 Cin., 311; *Hann. & C. R. R. Co. v. Crane,* 102 Ill., 249; *Handy v. Aetna Ins. Co.,* 37 Ohio; *Wilson Pack. Co. v. Hunter,* 8 Cent. Law J., 333; *Nichol v. Mercantile, &c.,* 14 Cen. Law J., 51; *Hale v. Cont. L. Ins. Co.,* 12 Fed. Rep., 359; *Lovejoy v. Hartford Co.,* 11 Fed. Rep., 63 and note p. 69; *Good Hope Co. v. Ry. Barb Fence Co.,* 22 Fed. Rep., 625, 637.

Let us see how far telegraph companies (and we are both telegraph companies) may extend their lines in and through States of the Union other and outside of the States which created them. The telegraph is a matter of commerce, just as much so as the railroad, the steamboat, the mail, or the express company. The Congress of the United States has recognized this and spoken in unmistaken tone by an act passed July 24th, 1866, Rev. Stat. U. S., Sec. 5263. Under this law, by Section 5268, before any telegraph company could exercise any of the powers and privileges conferred by the law, such telegraph company was obliged to file their written acceptance with the Postmaster General of the United States of the restrictions and obligations required by this law. Such acceptance has been filed by the relator and was so filed when said relator built its line through this State. The Supreme Court of the United States has fully recognized the telegraph and the sending of telegraph messages as commercial transactions, and to come within the

purview and meaning of that clause of the Constitution of the United States which delares that Congress shall have power " to regulate commerce with foreign nations, and among the several States.   *Pensacola Tel. Co. v. Wes. U. Tel. Co.,* 6 Otto., 1-13. The last matter contained in the motion to discharge the rule, is that this court possesses no jurisdiction to proceed by way of mandamus against said respondent.   Mandamus is the proper remedy where the law affords no adequate or specific remedy to secure the enforcement of the right and the performance of the duty which it is sought to coerce.   High's Ex. Leg. Rem., Sec. 10; *Wood on Mand.,* Pg. 56, 23, 63, 68 ; 12 Barb., 217 ; 35 N. T., 396 ; 1 Ohio St., 77 ; 44 Ala., 284 ; 11 Pa. St., 196 ; 25 Barb., 73 ; *People v. Supervisors, etc.,* 12 Barb., 27 ; 26 Ark., 482 ; *Com. v. Rossiter,* 2 Binn., 360 ; *Lagram v. State,* 24 Mich., 468 ; *People v. Thompson,* 25 Barb., 73 ; 17 Ala., 527 ; 6 A. & E., 365 ; *State v. Hart. & New Haven R. R. Co.,* 29 Conn., 538.   Mandamus is the proper remedy to enforce a duty as a common carrier—whether such carrier is operating under statutes or at common law.   *State of O. Ex. Rel., The Amer. Un. Tel. Co. v. Bell Tel. Co., et al.,* 36 Ohio, 296 ; *Amer. Un. Tel. Co. v. St. Louis Bell Tel. Co. Cent. L. J.,* Vol. 11, 359, 360 ; *A. U. Tel. Co. v. St. L. B. Tel. Co.,* Cent. L. J., 10 ; 45 Barb., 136 ; High Ex. Leg. Rem., Sec. 320, 322 ; *Chicago & C. N. W. R. R. Co., v. The People,* 56 Ill., 365, 380-385 ; *People v. C. & A. C. R. Co.,* 5 Chicago Leg. News, 436 ; *Hobersham v. Savannah & C. Canal Co.,* 26 Ga. 665-676 ; In re Trenton Water Power Co., Spen. 659 ; *People v. Rochester R. R. Co.,* 21 N. Y., Sup. Ct., 371 ; *Md. & Cinn. R. R. Co. v. The State,* 37 Ind., 489. Have the people of this State any rights which respondents are bound to respect ?   If they are here rightfully, then they are public servants, and must treat the public without discrimination.   When the character of a corporation or the general statute in force and applicable to the subject imposes a specific duty, either in terms or by force, and reasonable construction and implication, and there is no other specific or adequate remedy, the writ of mandamus will be awarded and it will be used for the benefit of private persons, as well as for the public. *Mobile & Ohio R. R. Co. v. Wisdom,* 5 Heisk (Tenn) 125, 151, 155, 156, 157.   There is no distinction between a suit at law, and a proceeding by mandamus, where the legal remedy is inade-

quate under the circumstances above stated. High's Ex. Run., Sec. 8; *McBaux v. People*, 50 Ill.. 503, 507; *State v. Bailey*, 7 Iowa, 390; *Judd v. Driver*, 1 Kan., 455; *Wood on Mandamus, Com. of Ky. v. Dom. Gov. of Ohio*, 24 How. 66, 97; *Kendall v. U. S.*, 12 Pet., 615; *Kendall v. Stokes, et al.*, 3 How., 100; 4 Ark. 302. If we have a right to proceed in equity, then our proceeding by mandamus remains, and we have our option which to adopt. High's Ex. Leg. Rem., Sec. 20; *The People v. Mayor of New York*, 10 Wend., 395. The principle that seems to lie at the foundation of applications for this writ, and the use of it is, that whenever a legal right exists that party is entitled to a legal remedy, and when all others fail the aid of this may be invoked.

THE COURT, COMEGYS, C. J.:

In this case we are asked to decide, upon a rule to show cause, the question whether the plaintiff in the rule is entitled to ask for it; and if he be, whether he has shown such facts as, if true, would justify the court in granting it. Apparently no more important subject has arisen, for a long time, for decision in this State than that which the papers and argument present, of the right of a foreign corporation to ask for a mandamus to facilitate it in this State of the powers conferred upon it in the State of its creation. Its importance is greatly magnified because of a question which, but for the sufficiency for the purposes of decision of others presented, we should be bound to consider and pass upon. The case before us, does not, however, require that we should go into that subject at any length, and therefore we will pass it.

The difficulty in dealing with the application to make the rule absolute, is that of seeing upon what it can be based. As we conceive, none has been shown to us. Supposing, for the mere sake of the argument, however, that a foreign corporation can have any existence, or capacity, in this State, to be recognized by its courts, without legislative enactment, how can it be claimed that the plaintiff in this case has such, seeing that its operations are expressly confined to the territorial limits of Maryland, whose creation the corporation is? Cases have been presented which decide that where, by the terms of the act of incorporation, or the general law of a State, a corporate body has power to act generally, everywhere,

the States, by comity—that is, gracious favor, extended also by
other States to their creations—will allow it to exercise, to a reason-
able extent, its powers within them. That is to say, they will allow
it to seek redress in their courts for breaches of contract, for exam-
ple. But this is, obviously *ex gracia* merely. It cannot, in any
sense, be claimed as a *right*. The States are independent; and can
open their courts, or not, to foreignors, or foreign (that is, as applied
to them) corporations. These latter, being mere artificial bodies,
and not personal in a sense to entitle them to be treated, in a ques-
tion such as this, as citizens of another State, the usage of comity
which prevails, does not necessarily, or appropriately, exist for
them. It is by the comity of a country, its courtesy to another
country, that a citizen or subject of the latter is allowed to use its
juridicial process. It is true that, so far as citizens of any State of
the United States are concerned, there is secured to them, by the
Federal Constitution, the same rights, privileges and immunities
which citizens, as such, enjoy in their respective States. This is by
virtue of, and to consolidate their nationality; but the provision is
not for corporate bodies, which are citizens in no sense except for
redress of grievances in the courts of the Union. In them they
are such by judicial construction. Were corporate bodies entitled
to the same recognition as citizens, then all constitutional restraint
upon their creation would be nugatory. The provision of our own
constitution which requires a vote of two-thirds of each branch of
the legislature to pass a corporate act, could be rendered a dead
letter by the courts, if comity could clothe a foreign creation with
corporate functions here. This is conclusive of the view that, in
this State at least, to give a foreign corporation the right to demand
a *mandamus* to enable it to use its foreign franchises, something
more is needed to insure compliance than the mere invocation of
comity.

But the invoked action of comity would be misapplied in a
case like that before us—of a corporation expressly limited, by its
own charter, to the transaction of business within the limits of the
State of Maryland. It is conceivable that a corporate body unre-
stricted to State territory, and created to pursue a business which
might be followed anywhere, should, where there is no constitu-
tional, or legal impediment in the way, be recognized by a State,

and allowed to act in it by courtesy; but where one is expressly, as in this case, confined to the jurisdiction of its birth in its operations, it is not conceivable that it should be allowed to act beyond it. In the nature of its being, it cannot project itself, by any mere recognition of a court into another jurisdiction and act there—for it would have nothing to show in justification, To adopt it in anyway in another State, would be in fact a want of comity on the part of such State—as clothing it with a function which was withheld from it by the act which created it.

Without going any further into the subject, we give as our judgment that the motion in this case ought to be practical, and we therefore order that the rule be discharged.